**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000354
30-JUN-2017
08:26 AM**

NO. CAAP-15-0000354

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee, v.
WALTER BROWN, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 13-1-1006)


MEMORANDUM OPINION
(By:  Fujise and Leonard, JJ.
with Nakamura, C.J. dissenting)

Defendant-Appellant Walter Brown (Brown) appeals from
the March 25, 2015 Judgment of Conviction and Probation Sentence
entered by the Circuit Court of the First Circuit (Circuit
Court).[1]  Brown was convicted of Assault in the Second Degree, a
violation of Hawaii Revised Statutes (HRS) § 707-711(1)(a) and/or
(b) (2014).  He appeals his conviction on the grounds that his
right to confrontation was violated when the trial court refused
to allow cross-examination of the victim about her pending
misdemeanor assault charge and probation status in order to show
bias, interest or motive.

**I.**

**A.**

According to complaining witness (CW), she arrived with
her sister (Sister) (collectively, Sisters) and their children at
the McDonald's Restaurant on Beretania Street in the afternoon of
February 20, 2013 to meet their mother (Mother) for lunch.
However, upon arriving at McDonald's, CW did not see Mother's

---

[1]     The Honorable Edward H. Kubo, Jr. presided.

car.  Sister needed to use the restroom and CW wanted to check inside for Mother to help with the children, so CW parked the car and the Sisters both entered the restaurant.

As soon as the Sisters stepped into McDonald's, they encountered their father, Brown, whom CW said she had not seen in years.  He walked toward them with an "upset face" and CW did not know what to think.  Without warning or provocation, Brown grabbed both of them by their necks and pushed them back out of the restaurant.  As she was being pushed backward, CW fell, grabbing on to Brown's shirt, and felt Brown step on her head. CW got back up and tried to get Brown off Sister.  Brown let Sister go and went after CW.  As Sister tried to draw Brown away from CW, Brown grabbed Sister and slammed her to the ground.  Again, CW tried to get Brown away from Sister by pushing him, then punching him.  CW heard Brown say, "Leave my wife alone," but she said nothing in response and did not know what he was talking about.  CW asked, "What did we do wrong to you?" and Brown responded, "Being born."

CW ran, then stopped to turn and see what was going on, when she "got punched from the back up" and thought she lost a tooth.  Brown kicked her, and after Sister screamed at him to stop, he ran after Sister and slammed her to the ground again, and was "banging her head on the ground."  CW saw "some anonymous person" pick Brown up and both landed in the bushes; at about this time the police arrived.  During this episode, Brown's wife (Wife) stood at the entrance to the restaurant.  CW denied being involved in any altercation with Wife.[2]

Sister's version of the fight was largely the same as CW's.  She testified that as she and CW entered the restaurant, Brown grabbed them and "flew us to the ground."[3]  Sister tried to stop Brown from hitting CW by hitting Brown on his back; when Brown turned on her, CW hit Brown on his back and ran away,

---

[2]     CW saw Brown's Wife in the restaurant, but denied that either she or Sister punched Wife on her nose.  CW acknowledged that she did not like Wife, but that "Doesn't mean I hate her or would hurt her."

[3]     Sister denied that CW "broke free" from Brown and punched Wife on the nose.

drawing Brown towards CW. Brown punched CW on the left side of her jaw, and Wife yelled to Brown to "hit," "get" and "kill" them. Sister testified that Brown "slammed" her on the ground three times and that a man from the restaurant area pulled Brown off her.

A security guard from the building next to McDonald's testified that he saw a man and woman arguing at the 'Ewa end of the McDonald's parking lot, and as they got closer to each other, the man hit the woman on the left side of her jaw with his right hand and it made a "really loud pop sound." He saw the woman's knees buckle "like she was trying to catch herself" and the man hit her on the other side with his left hand, then used an uppercut with his right hand to her thigh/buttocks. He did not see the woman attack the man in any way. Later, he saw the woman crying and holding her jaw, which was open with a lot of blood coming out of it.

The security guard heard another woman, who appeared to be the first woman's friend, yelling at the man "from far away," "You can't just hit her like that and walk away." The man approached the friend, who had "put up her hands in defense," grabbed her hands to get them out of the way, and then they were on the ground with the man pinning her down. As soon as it looked like he was about to punch her, a bystander pushed the man off the woman and into the bushes. The man immediately got up and took up a fighting stance in front of the bystander, then tried to tackle the bystander, who was able to avoid the maneuver and push the man off.[4] Before the men could fight, the police arrived.

The McDonald's manager testified that there was a big commotion inside the restaurant[5] and he followed everyone running outside so he could see what was going on. He saw "a man []

---

[4] The security guard also heard a very angry pregnant woman exit the restaurant and tell the bystander, "Mind your fuckin' business." He did not see any injuries on this pregnant woman.

[5] The manager testified that he did not see "the two girls" who were later hit, in the restaurant at any point. He admitted that he did not know if the woman who was hit had earlier hit the man who hit her or the pregnant lady.

attacking a girl, hitting her," so he ran back inside to call 911. When he came back outside, he saw the man and girl standing, and the man was punching her. The girl was trying to protect herself and yelling "stop, stop, stop." The fight seemed to subside until a pregnant lady started instigating or verbally abusing the young girl. The girl was responding, and then the man went after her again, started hitting her, then grabbed her by her neck and punched her in the chin. Another girl came out of a vehicle, yelling for him to stop, and the man chased her, grabbed her, and hit her. The man stopped hitting the girl when a bystander pushed the man into the bushes.

Wife testified in Brown's behalf. According to Wife, just prior to the incident, Mother came up to her at the restaurant, pointed her finger less than a foot from Wife's face and said, "If I ever catch you talking to that bitch Sandy, I'll fuck you up." As Brown returned to his family's table, he told Mother to "get out of here" and "Don't threaten my family." Mother responded, "F-U, you faggot. I'm going to call my husband to come kick your ass." With that, Mother left the restaurant, and they could see her sitting in her vehicle with the door open, dialing on her phone, then driving out of the parking lot.

Brown and Wife decided to leave and packed up their food. Brown was first at the door, holding their food and drink in his hands when he saw the Sisters. Brown raised his arms to hold back the Sisters because they were swinging, punching, and scratching him. According to Wife, CW fell two or three times during the attack, but kept getting up. At one point, CW got past Brown, who was trying to keep CW back, came up to Wife as Wife stood in the doorway, punched Wife on the nose, and told her, "You're lucky you're pregnant." Wife called to Brown, "Babe, she hit me." After this punch, CW fell and hit her head on one of the tables. Wife denied that Brown choked, slammed, or stomped either sister and denied that Brown punched CW on the jaw.

Brown testified he was with Wife and their three children in the McDonald's restaurant. Wife was pregnant with twins, which was a high risk pregnancy due to Wife's previous

miscarriages. Brown also testified to Mother's confrontation with Wife and that he saw Mother leave the restaurant, apparently use her phone, and drive away.

Brown testified that as he got close to the door, he saw the Sisters and extended his arms out to block them. One of the Sisters asked, "What are you doing?" They were "angry," "looking past" him, and one of them yelled "Fuck you, bitch" to Wife. Brown pushed the Sisters out the door and CW fell to the ground, hitting a table near the door on the way down. CW got back up and past him; he heard Wife say "Babe, [CW] hit me," but he did not see what CW had done to Wife. As Brown tried to stop the Sisters from going after Wife, CW fell numerous times, and that the Sisters were trying to get past him by punching, scratching, and pulling his shirt. Brown said CW wanted to fight and came towards him swinging, punching him in the nose. Brown warned CW that "[I]f you're going to hit someone . . . you got to expect that someone is going to hit you back, and it's going to feel like this." As CW came at him again, Brown blocked her with an open hand. Brown testified that CW "fell forward. She fell sidewards" and hit her head on one of the tables outside. Brown denied ever punching CW, choking or grabbing CW or Sister by their necks, slamming them to the ground, or stomping on anyone's head. Brown maintained that the stranger pushed him into the hedge and wanted to fight with him for no reason.

CW was taken to Queen's Medical Center and treated for a broken left jaw. On July 12, 2013, Brown was charged with one count of Assault in the Second Degree, a violation of HRS § 707-711(1)(a) and/or (b) (2014) for the injuries to CW and one count of Assault in the Third Degree, a violation of HRS § 707-712(1)(a) (2014) for the injuries to Sister.

## B.

On December 12, 2014, Brown submitted a notice of intent to introduce evidence of other crimes, wrongs, or acts by CW. Relevant to this appeal were the following items:

    a.    On February 18, 2013, [CW], while a passenger in a vehicle, lifted herself higher out the passenger window holding onto the vehicle's luggage rack and threw a Pepsi can at a crowd gathered in the driveway of Ms. Tina Jardine for

a birthday party. [CW] also yelled "Fuck You Bithces. [sic] Come on now you Fucka's." [CW] was charged with Harassment under HRS § 711-1106 (See HPD Report No. 13-062663).

. . . .

c.    On October 28, 2010, [CW] went to [Mother's] residence and punched and kicked the secured front screen door and yelled at [Mother] through the screen door she was going to kill [Mother]. [CW's] five year old daughter was present with her. Prior to arriv[ing] at [Mother's] residence, [CW] texted [Mother] calling her names like psychotic and one of her text messages said she was going to kill [Mother]. [Mother] feared [CW] was going to harm her. HPD Officer Mike Tanaka observed the threatening text message. [Mother] is [CW's] mother. [CW] was charged with Terroristic Threatening in the Second Degree under HRS § 707-717 (See HPD Report No. 10-386460).

d.    On April 4, 2011, [CW pled] no contest to the amended charge of Harassment, HRS § 711-1106(1)(b), under Case ID 1P1100010788 and associated with HPD Report No. 10-386460. [CW] was sentenced to six (6) months probation and a $50 suspended fine.

. . . .

**f.    On February 20, 2013, [CW] was arrested and charged with Assault in the Third Degree against [Wife] under HPD Report No. 13-064724 and Case ID IDCW-13-0005867 for conduct arising out of the same incident in the [present] case.**

**g.    On February 20, 2013, [CW] was arrested and charged with Assault in the Third Degree against [Brown,] under HPD Report No. 13-064722 and Case ID 1DCW-13-0005867 for conduct arising out of the same incident in the [present] case.**

. . . .

j.    On December 12, 2013, [CW] was arrested for and charged with Abuse of Family or Household Members under HRS § 709-906 against her eight-year old daughter, [Z.B.]. [Z.B.] told her school counselor [CW] had struck her in the face with an open hand causing pain. [Z.B.] had a purplish bruise on the right side of her face. (See HPD Report No. 13-452477).

k.    On March 4, 2014, [CW] pled guilty to the amended charge of Assault in the Third Degree under FC-CR No. 13-1-2324 associated with HPD Report No. 13-452477. [CW] was sentenced to one (1) year of probation and ordered to complete a domestic violence intervention program and complete parenting classes.

l.    [CW] is currently under Misdemeanor probation supervision.

(Emphasis in original).

At the December 29, 2014 hearing, the Circuit Court ruled that if Brown could confirm that CW was convicted of the harassment described in paragraph "a", he would allow it as evidence of the first aggressor. The Circuit Court also granted paragraphs "c" and "d" as evidence of the first aggressor. The Circuit Court denied paragraphs "f" and "g" after the following exchange:

> THE COURT: . . . [T]hat complainant was arrested for assault third against [Wife] --
>
> . . . .
>
> THE COURT: -- and the next one which is arrested for conduct arising out of the same incident, that's this case; right?
>
> [STATE]: Yes.
>
> THE COURT: Okay. So that is irrelevant since it's the -- this case --
>
> . . . .
>
> THE COURT: -- and you're going to be bringing in the entire facts and circumstances of the res gestae.
>
> [DEFENSE]: Yes, your Honor. The reason why I believe it is relevant is in the sense that what the jury sees is they see that my client is accused of the crime that's arising from the same incident, but she was arrested -- [CW] was arrested and charged with crimes related to the very same incident. I believe it's important for the jury to see that as well because that also goes to first-aggressor violent behavior that's associated. The police arrested both of them, essentially.
>
> THE COURT: But it's - the jury is to determine the guilt or innocence of the defendant based on his conduct, and the arrest of other people is irrelevant to whether or not the State can make its burden of proof as to the material elements as to the defendant. And so I think that interjecting the fact that the complaining witnesses were arrested confuses the jury and misleads them in an unfair way. And so I feel that this court will exercise its discretion, and with regard to both arrests, I will deny[.]

The Circuit Court denied evidence of another assault in the third degree conviction, stating:

> THE COURT: . . . In this particular case, what we are discussing -- should be evidence of recent vintage. The arrest and charging and conviction which is almost eight years old is old enough where this court believes it will be where the prejudice far outweighs the probative value.
>
> In any event . . . this Court has already ruled

7

that two fresh instances of aggressive conduct . . .
made by the complaining witness is admissible. That
is enough to put the issue before the jury and to show
the jury any 404(b) conduct which they should consider
in this particular case.

The Circuit Court granted paragraphs "j" and "k," but denied paragraph "i":

THE COURT: . . . [H]ad this instant case not
involved a family fight, . . . I would be prone to
strike that evidence. However, this being an issue
involving an intent by a family member to engage in
conduct causing bodily injury to another family
member, this takes on more relevance than prejudice to
such an extent that the prejudice is not far
outweighed by the probative value. So this Court will
grant the evidence coming in.

And, finally, that evidence that the complaining
witness is currently under misdemeanor and probation
supervision this court will deny. I think that has no
probative value whatsoever.

The Circuit Court then informed defense counsel that out of the three instances just ruled admissible, Brown would only be allowed to bring in two:

THE COURT: . . . [W]hen we're looking at the overall
picture, three is more prejudicial than probative. Two is
okay to give . . . the jury the picture of aggression, and
so I will allow you to bring in two out of the three[.]

At trial, Brown asked the Circuit Court to reconsider its decision to prohibit evidence of CW's arrest for assaulting Brown and Wife:

[DEFENSE]: . . . Defense just wants to be clear
that I believe that it's pertinent to our defense that
the defense be allowed to get into the fact that she
was also one charged, and that she -- the police were
also on their way to arrest her because of the reports
filed by [Brown and Wife].

. . . .

. . . [I]f we were to use the defense of mutual
affray, your Honor, it's a stronger defense if you
were to show that she too was charged by the police,
your Honor, and she too was arrested, your Honor. And
so we believe that by not allowing us to go into that
. . . restricts the defenses that we may be able to
assert in this case.

. . . .

THE COURT: . . . This trial deals with the guilt
or innocence of [Brown]. The jury will be advised
that they are to consider this evidence as to him and
no one else. To bring in any outside information of
another being arrested raises a presumption of guilt
of that other person which is not being tried in this

8

case at this time. That's for another court to decide. What is sufficient is the guilt or innocence of the defendant based on the evidence and this indictment and two counts, and so this Court will deny the defense's request to bring in evidence of anyone else's arrest because that's neither here nor there, nor is it the purview of the jury to decide the guilt or innocence of anyone else.

You want to proceed on your 404(b). Your 404(b) which we discussed, the two out of the three is granted on your end.

Brown renewed his argument regarding evidence of assault charges against CW stemming from this incident. This time, Brown argued that the information was relevant to CW's bias, interest, and motive.

[DEFENSE]: . . . [CW] is charged with two assaults, the assault against [Brown] and the assault against [Wife], and it's my understanding that the State nolle prosequied the case against [Brown].

I think, again, that bringing in the fact that she was charged is paramount to the fact that now she has bias, motives -- she had bias, motives, and interests prior to the nolle prosequiing of the case. But I believe now she has even more so because now she doesn't have to face being charged against [Brown], so she frees up in her testimony to be inconsistent, not have to worry about any repercussions of that in her case in which she is the defendant. So I do believe now, your Honor, that even more so this goes to bias, motive, and interest.

[STATE]: Your Honor, I don't know why the case was nolle prosequied, but the fact that she was charged is not relevant to this case. If we're gonna get into the fact that she was charged, then are we going to get into the fact that it was nolle prosequied? Because --

THE COURT: I've already made my ruling on that, and the ruling still stands. As far as we're concerned, we're here on one case against one person, and I'm not going to have mini trials within a trial. So I've made my ruling, and the Court will deny the reconsideration.

On cross-examination, CW was questioned about and admitted the prior charge for the incident involving her daughter. CW was also cross-examined about a post she wrote on Mother's Facebook page on April 1, 2013, and admitted that she made the following statement regarding Wife and the February 20, 2013 incident: "bahahahaha fuckin' silly girl gave birth. Now let's see who will laugh. Talk shit, get hit. I ain't scade. . . . Let's do it again, me and you round two. Oh, wait,

9

round one wasn't finished." Lastly, CW was cross-examined about the 2010 terroristic threatening charge stemming from the incident at Mother's residence. CW denied saying she was going to kill her mother but admitted to pleading to an amended charge of harassment for that incident.

On January 5, 2015, the jury returned a verdict of guilty on Count I, Assault in the Second Degree.[6]

During the hearing on Brown's motion for a new trial, Brown renewed the issue of CW's probation.

> [DEFENSE]: . . . [W]e would ask the Court to consider a new trial in this case and . . . the basis for that . . . would be . . . the fact that [CW], her charges, her -- the fact that she was on probation, the jury's precluded from hearing that. Again, we believe that that would be something that . . . would've been essential to the jury to hear with regarding whether or not she was truly a victim . . . as the complaining witness in the case against [Brown].
>
> . . . .
>
> [STATE]: . . . [W]hether or not she was on probation at the time of the incident is clearly irrelevant and has no probative value[.]
>
> . . . .
>
> THE COURT: . . . [T]he call of the question still remains as to whether or not there was sufficient evidence that the jury's verdict stands under the reasoning of the evidence.
>
> . . . [T]he crucial evidence that I believe the State's case rested on were third party witnesses and their observations as to what happened. . . . [B]ecause these third party witnesses had no dog in the fight, whereas everyone else had their own interest at heart, understandably, under any form of cross-examination, it would've brought out bias, interest or motive.
>
> . . . .
>
> . . . I think that the only possible way the verdict would've been changed would've been that security guard from the next building, the lack of his testimony, and maybe the lack of the testimony from the McDonald's manager. Their observations were very compelling in overcoming any self-defense or defense of others defenses.

Brown's motion for a new trial was denied, and the Circuit Court entered the Judgment of Conviction and Probation Sentence on March 25, 2015. Brown was sentenced to probation for

---

[6] The Circuit Court granted Brown's motion for judgment of acquittal as to Count II (Sister) at the end of State's case-in-chief, for lack of evidence that Brown's alleged actions caused her physical pain.

four years with, *inter alia*, a special term of seven days of imprisonment with credit for time served.  This appeal followed.

## II.

Brown raises one point of error on appeal:

> 1. The trial court's refusal to allow [Brown] to cross-examine [CW] regarding the dismissal of her pending district court case for assaulting [Brown] based on the same incident as the instant case, and her pending district court trial for assaulting [Wife], which was also based on the same incident as the instant case, and the fact that she was on probation for an unrelated offense, violated [Brown's] right to confrontation as guaranteed by the sixth and fourteenth amendments to the United States Constitution and article I, section 14 of the Hawai'i State Constitution. The afore-mentioned evidence was admissible to show bias, interest, and motive.  In addition, the error in excluding the evidence was not harmless beyond a reasonable doubt because except for the testimonies of [Brown] and [Wife], there was no other evidence with which to impeach [CW's] testimony which suggested that her fractured jaw was not caused by falling and striking her head on a table, but rather was the result of being punched in the jaw or stomped on the head by [Brown].

> . . . .

> Without being allowed to question [CW] regarding her pending assault charges against [Brown] and [Wife], as well as the fact that she was on probation, the defense was unable to expose [CW's] bias and motive for fabricating the charge against [Brown].

We begin with the notion that

> "[b]ias, interest, or motive is <u>always relevant</u> under [Hawaii Rules of Evidence (HRE)] Rule 609.1." *[State v.] Estrada*, 69 Haw. 204, 220, 738 P.2d 812, 823 (1987) (emphasis added). The degree to which evidence might tend to show possible bias, interest, or motive is not the determining factor with respect to admissibility of evidence under HRE Rule 609.1. Rather, the relevant inquiry is whether such evidence has "<u>any tendency</u> to support an inference of the witness' disposition or tendency, consciously or unconsciously, to slant testimony, one way of the other, from the straight and true." Addison M. Bowman, *Hawai'i Rules of Evidence Manual* (HRE Manual) § 609.1-[1][C] (2010-11 ed.) (emphasis added). Once evidence has been shown to be relevant to possible motive, interest, or bias, "it is error not to allow cross-examination to reveal possible bias." *Estrada*, 69 Haw. at 220, 738 P.2d at 823.

<u>State v. Levell</u>, 128 Hawai'i 34, 40, 282 P.3d 576, 582 (2012) (emphasis in original).

> However, the trial court's discretion in exercising control and excluding evidence of a witness's bias or motive to testify falsely becomes operative only after the constitutionally required threshold level of inquiry has been afforded the defendant.  The Sixth Amendment is satisfied where sufficient information is elicited to allow the jury to gauge adequately a witness'[s] credibility and to assess his [or her] motives or possible bias. <u>When the</u>

> trial court excludes evidence tending to impeach a witness,
> it has not abused its discretion as long as the jury has in
> its possession sufficient information to appraise the biases
> and motivations of the witness.

State v. Balisbisana, 83 Hawai'i 109, 114, 924 P.2d 1215, 1220 (1996) (citations and quotation marks omitted, emphasis added).

In addition,

> The denial of a defendant's constitutionally protected opportunity to impeach a witness for bias, motive or interest is subject to harmless error analysis. A defendant's conviction will not be overturned if a court commits an error that is harmless beyond a reasonable doubt. However, an error is not harmless if there is reasonable possibility that the error might have contributed to the conviction. In reviewing whether an error was harmless, this court examines the entire record. A host of factors may be considered, including the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Levell, 128 Hawai'i at 41-42, 282 P.3d at 583-84 (citations, some brackets, and internal quotation marks omitted).

Brown argues that the dismissal of the pending misdemeanor charge of assault against CW involving him was relevant to show that CW might consciously or unconsciously shade her testimony in favor of the State because the State dismissed this charge. Moreover, Brown contends that the evidence was relevant to show that she had an interest in ensuring the State obtained a conviction of Brown in order to motivate the State to dismiss her pending misdemeanor charge for assaulting Wife. Finally, Brown argues the evidence was relevant to show that CW had a motive to lie about assaulting Brown and Wife, because any admission that CW assaulted Brown or Wife could be used against her in the pending assault-of-Wife trial or could be used to revoke her misdemeanor probation for an unrelated conviction for assault and could result in possible imprisonment.

Brown concedes that the trial court allowed extensive cross-examination to show that CW may have been the first aggressor but argues that the excluded evidence of bias, interest, and motive could have caused the jury to doubt CW's credibility and strengthened Brown's defense that he did not cause CW to suffer a broken jaw. We disagree.

There was sufficient information presented at trial from which the jury could have assessed CW's credibility. First, because CW was one of the persons allegedly assaulted in this case, the jury would have understood CW had a motive to provide testimony supporting the allegation and possibly embellishing the same. Second, CW admitted that she disliked Brown due to their family history and admitted that she had placed a post taunting Wife on Mother's Facebook page after the incident. Third, as her sister was also allegedly assaulted, the jury would also understand CW had a motive to support Sister in her testimony. Fourth, the jury also heard about CW's past convictions for harassment and assault involving family members. Finally, as Brown concedes, cross-examination was otherwise extensive.[7] The jury had ample information from which to assess CW's credibility.

Even if we were to assume the exclusion of this evidence was improper, on the unique facts of this case, any error was harmless.

There is no doubt that CW's testimony was important to the prosecution's case and that there was no other evidence that CW had also been charged for this incident or that she was under probation for a previous offense at the time of trial.

However, besides CW, the prosecution presented three percipient witnesses, two of whom were disinterested bystanders. All testified to Brown punching CW's head with force; one bystander testified he heard a loud popping sound at the time. All three also testified that they did not see CW touching Brown before he hit her. Thus, as to the material points, there was ample testimony corroborative of CW's version of the events.

The Circuit Court allowed extensive cross-examination of CW, on subjects including who was the first aggressor, CW's previous convictions for harassment and assault against family members, and her relationship with Brown.

Finally, the State's evidence against Brown was strong.

---

[7]     Brown argues that the Circuit Court "did not allow any cross-examination to show that [CW] might not have been credible about whether the fractured [sic] may have been caused by [Brown] stomping on her head or whether, in her haste [sic] attack [Brown and/or Wife], she may have fractured her jaw when she fell and hit her head on a table." Brown provides no citations to the record for this assertion.

Although both Wife and Brown testified that CW hit her head on a table in the restaurant, testimony regarding CW's bleeding from her mouth and inability to speak as well as strong blows to her jaw established the injury occurred after CW was out of the restaurant. The testimony of three witnesses other than CW to the assault against her as well as the physician establishing the extent of her injuries amounted to a very strong, if not overwhelming, case.

Based on our examination of the entire record, we conclude that the exclusion of the evidence of the pending charges against CW and her probation status could not have contributed to Brown's conviction and therefore was harmless beyond a reasonable doubt.

### III.

We affirm the March 25, 2015 Judgment of Conviction and Probation Sentence entered by the Circuit Court of the First Circuit.

DATED: Honolulu, Hawai'i, June 30, 2017.

On the briefs:

William H. Jameson, Jr.,
Deputy Public Defender
for Defendant-Appellant.

Associate Judge

Sonja P. McCullen,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

Associate Judge

14

DISSENTING OPINION BY NAKAMURA, C.J.

I respectfully dissent. In my view, the Circuit Court erred in excluding evidence that the complaining witness (CW) had a pending assault charge arising out of the same incident and evidence that the CW was under probation supervision for a misdemeanor offense.

At the time of trial, the CW had a pending assault charge for assaulting the wife of Defendant-Appellant Walter Brown (Brown) that arose out of the same incident that generated the assault charges against Brown.[1] The CW was also on probation for a misdemeanor assault offense. These circumstances created a potential interest, motive, and bias for the CW to testify falsely that was different in nature and character than revealed by the other evidence permitted by the Circuit Court. The CW would be subject to criminal punishment if she were convicted of assaulting Brown's wife. In addition, if the CW admitted to assaulting Brown's wife or Brown, she would face the possible revocation of her probation. Thus, the CW had an interest, motive, and bias -- her own self-interest in avoiding criminal punishment -- to deny that she assaulted Brown's wife or Brown and to deny that Brown's actions were taken in defense of his wife or in his own self-defense. The evidence excluded by the Circuit Court was the only viable means for Brown to impeach the CW with her interest, motive, and bias to shape her testimony to avoid her own criminal punishment. Accordingly, I believe the Circuit Court erred in excluding evidence that the CW had a pending assault charge for assaulting Brown's wife and was under probation supervision.

Both of the disinterested bystanders acknowledged that they did not observe the entire interaction between the CW, Brown, and Brown's wife. Under the circumstances presented, I cannot conclude that the Circuit Court's error in excluding the

---

[1] The CW had also been arrested and charged with assaulting Brown in the same incident, but the State of Hawai'i had dismissed that charge shortly before the CW testified in Brown's case.

evidence that the CW had a pending assault charge arising out of the same incident and evidence that she was under probation supervision was harmless beyond a reasonable doubt.

*Craig H. Nakamura*